**BOIES SCHILLER FLEXNER LLP**
Maxwell V. Pritt (SBN 253155)
mpritt@bsfllp.com
44 Montgomery Street, Floor 41
San Francisco, CA 94104
Telephone: (415) 293-6800
Facsimile: (415) 293-6899

Duane L. Loft (*pro hac vice*)
dloft@bsfllp.com
Melissa J. Kelley (*pro hac vice*)
mjkelley@bsfllp.com
Brianna S. Hills (*pro hac vice*)
bhills@bsfllp.com
55 Hudson Yards
New York, NY 10001
Telephone: (212) 446-2300
Facsimile: (212) 446-2380

*Attorneys for Petitioner, Quadre Investments, L.P.*

**REID COLLINS & TSAI LLP**
Marc S. T. Dworsky (SBN 157413)
mdworsky@reidcollins.com
7 W. Figueroa Street, Suite 300
Santa Barbara, CA 93101
Telephone: (213) 429-4022

William T. Reid*
wreid@reidcollins.com
Rachel S. Fleishman*
rfleishman@reidcollins.com
Minyao Wang (*pro hac vice*)
mwang@reidcollins.com
Yonah Jaffe*
yjaffe@reidcollins.com
330 West 58th Street, Suite 403
New York, NY 10019
Telephone: (212) 344-5200

Jonathan M. Kass*
jkass@reidcollins.com
300 Delaware Avenue, Suite 770
Wilmington, DE 19801

*Attorneys for Petitioner Oasis Focus Fund L.P.*

**pro hac vice* application forthcoming

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

In Re:

OASIS FOCUS FUND, LP,

Petitioner, for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding.

In re Application of:

QUADRE INVESTMENTS, L.P.,

Petitioner, for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding.

Case No. 3:22-mc-00112-BGS (consolidated with 3:22-mc-00156)

**DECLARATION OF JUSTICE INGRID MANGATAL (RET'D) IN SUPPORT OF THE APPLICATIONS FOR AN ORDER OF JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782**

I, Ingrid Mangatal, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. My name is Ingrid Mangatal and I am a former judge of the Grand Court of the Cayman Islands (the "**Grand Court**") and a retired judge of the Supreme Court of Judicature of Jamaica. I am currently an Associate Tutor (part-time) at the Norman Manley Law School, Kingston Jamaica, West Indies, tutoring final year Law School students in two courses, viz. civil procedure and trial advocacy.

2. I was called to the Bar in Jamaica in 1987. I graduated from the University of the West Indies, Mona Campus, Jamaica, with Upper Second-Class Honors in 1985 after pursuing a three-year law degree program (L.L.B.). I thereafter attended the Norman Manley Law School (1985-1987) where I gained my Certificate of Legal Education (C.L.E.) which qualifies one to practice law in Jamaica and other English-Speaking Caribbean countries.

3. I started my professional life in private practice (1987–2000) and became a Partner in one of Jamaica's most prominent law firms – Dunn, Cox – practicing commercial and civil litigation. I started as an Associate at Dunn Cox in 1990 and was subsequently made a Partner in 1995 and I served in that capacity between 1995 and early 2000. In 2000, I joined the Government service as a Resident Magistrate (Jamaica's lower court) and spent just over a year in that occupation. I thereafter became a member of the Attorney General's Department of Jamaica and between 2001–2003 served as the Director of Litigation in the Department. That post required me to supervise a large cadre of attorneys-at-law handling civil litigation brought against the Government and I argued many weighty judicial review and constitutional law cases in Court.

4. In 2003, I was invited by the then Chief Justice of Jamaica to become a High Court Judge (on the Supreme Court of Judicature of Jamaica) and I served in that position between 2003-2014. I presided over both civil and criminal matters. Between 2011–2013, I served in Jamaica's Commercial Court, handling complex commercial

matters. Between 2013 and 2014, I acted on Jamaica's Court of Appeal, Jamaica's second highest Court, with the Judicial Committee of the Privy Council (the "**Privy Council**") being its highest. Whilst on leave from Jamaica's High Court, I also acted as a Grand Court Judge in the Cayman Islands in 2009 and in 2014, each time for a period of approximately 3 weeks.

5. In all, I spent 12 years on the bench in Jamaica before serving in the Cayman Islands.

6. I was offered permanent appointment in the Cayman Islands in 2015 and sat as a Judge of the Grand Court for just under 5 years, between January 2015 and October 2019, when I resigned. During that time, I sat in all Divisions of the Grand Court, including the Financial Services Division, as well as the Civil, Family, and Criminal Divisions.

7. I have delivered numerous oral and written judgments/opinions in Jamaica and in the Cayman Islands. In relation to the Cayman Islands, the reported opinions can be seen in the Cayman Islands Law Reports and the unreported opinions are available on the Court's website at www.judicial.ky.

8. I decided to return home to Jamaica in 2019, but I continue to be available to conduct arbitrations and provide expert evidence on Cayman Islands law from Jamaica. As a retired judge I have also since February 2021 been appointed Chairperson of a three-member Supervisory Appeals Board that hears appeals from deposit taking institutions in relation to decisions by the Governor, and Supervisory Committee of the Bank of Jamaica, Jamaica's central bank.

9. I have substantial knowledge of Cayman Islands law governing corporate and securities matters, including public and private M&A transactions, as well as corporate litigation matters before Cayman Islands courts. In addition, I have court experience involving the appraisal process in the Cayman Islands following corporate going-private transactions.

10. I have presided over many matters filed in the Financial Services Division. This includes appraisal cases pursuant to Section 238 of the Cayman Islands Companies Act (2021 Revision) ("**Section 238**"). I have made rulings and decisions in interlocutory applications, including rulings on discovery and the role of expert witnesses, and have prepared for final hearings in Section 238 trials.

11. In this paragraph, I mention some of the most prominent Section 238 cases in which I presided, and the nature of the proceedings involved:

(a) FSD 75 of 2016: *In the Matter of Homeinns Hotel Group* (discovery) (Exhibit 5).

(b) FSD 24 of 2017: *In the Matter of Qunar Cayman Islands Limited* (interim payment) (Exhibit 9).

(c) FSD 129 of 2016: *In the Matter of Qihoo 360 Technology Co. Ltd.* (appointment of forensic expert) (Exhibit 13).

(d) FSD 123 of 2015: *In the Matter of Fountain Medical Development Limited* (discovery and expert evidence).

(e) FSD 170 of 2016: *In the Matter of E-House (China) Holdings Limited* (Interlocutory ruling. Subsequently, a 10-day trial commenced, but matter was settled by the parties on the 2nd day of trial while the Company's expert was being cross-examined).

12. Since 2020, I have provided expert opinions on Cayman Islands law for use in: the District Court and Court of Appeal in Amsterdam, the Netherlands; in the United States, namely district courts in New York, California, Delaware, Massachusetts, and Washington D.C.; and for an arbitration in Hong Kong. The evidence I have given has been mainly concerned with company law issues, and on a number of these occasions I have opined in relation to Cayman Islands appraisal proceedings under Section 238.

13. I have been engaged by Petitioners in the above-captioned matters to provide opinions regarding Cayman Islands law to be used in two applications (the

"**Applications**") under 28 U.S.C. §1782 ("**Section 1782**") in connection with an appraisal action pending in the Grand Court concerning SINA Corporation ("**SINA**" or the "**Company**"), Cause No. FSD128 of 2021 (RPJ) (the "**Appraisal Proceeding**").

14. To the extent the contents of this declaration are within my personal knowledge, they are true and accurate. To the extent the contents are not within my personal knowledge, they are true to the best of my current knowledge, information, and belief.

15. In the course of drafting this declaration, I have reviewed the following materials:

(a) Petitioner Quadre Investment's Application for an Order Pursuant to 28 U.S.C. § 1782 (Jan. 27, 2022), filed in these consolidated proceedings;

(b) Declaration of Rocco Cecere in Support of the Application of Quadre Investments for an Order of Judicial Assistance Pursuant to 28 U.S.C. § U.S.C. § 1782 (Jan. 27, 2022) filed in these consolidated proceedings. (I agree with Mr. Cecere's evidence as to the approach to appraisal proceedings pursuant to Section 238);

(c) Petitioner Oasis Focus Fund LP's Petition for an Order of Judicial Assistance Pursuant to 28 USC § 1782 (Jan. 24, 2022), filed in these consolidated proceedings;

(d) Declaration of Samuel Martin Pierce Dawson in Support of the Petition of Oasis Focus Fund LP, For Judicial Assistance Pursuant to 28 U.S.C. § 1782 (Jan. 24, 2022) filed in these consolidated proceedings (I agree with Mr. Dawson's evidence as to the approach to appraisal proceedings pursuant to Section 238);

(e) Respondent's Motion to Quash Petitioners' Applications for Orders Pursuant to 28 U.S.C. § U.S.C. § 1782 (May 16, 2022) filed in these consolidated proceedings;

(f) The Declaration of Jamie N. Noonan, dated May 15, 2022, and its exhibits,

(g) The Second Declaration of Rocco Cecere, which I understand is being submitted simultaneously with this declaration.

16. I understand that the Appraisal Proceeding was commenced by the Company, pursuant to Section 238, seeking the Court's determination of the fair value of the shares formerly held by those shareholders (the "**Dissenting Shareholders**") who have exercised their right to dissent from the merger through which the Company was delisted from the NASDAQ and taken into private ownership (the "**Merger**"). I further understand that, in the Appraisal Proceedings, a directions hearing was held on December 14-15, 2021, before the Honourable Justice Parker and judgment handed down by the Grand Court on January 25, 2022 (the "**Directions Judgment**") (appended to the Second Declaration of Rocco Cecere as Exhibit A). I am informed by the Petitioners that, following the handing down of the Directions Judgment, the parties filed an application in the Grand Court to determine certain outstanding directions. A further directions judgment was handed down on May 18, 2022 (the "**Second Directions Judgment**") and a final form of the directions order was sealed on the same date ("**Directions Order**") (both appended to the Second Declaration of Rocco Cecere as Exhibits B and C). The Second Declaration of Rocco Cecere at paragraph 6 explains the discrete issues covered by the Second Directions Judgment.

17. I further understand that the Applications seek discovery from TuSimple Holdings, Inc. ("**TuSimple**" or "**Respondent**") relevant to a determination of the fair value of SINA's shares.

18. In support of Petitioners' Applications, this declaration describes aspects of the statutory appraisal proceeding under Cayman Islands law, as well as certain evidentiary matters related to such proceedings. Specifically, set forth below is an

explanation of the following aspects of Cayman Islands law for the benefit of the Court:

(a) the role of experts in Section 238 cases;

(b) the Cayman Islands courts' approach to evidence that post-dates the "valuation date" set in Section 238 cases;

(c) the Cayman Islands courts' approach to valuation methodologies in Section 238 cases; and

(d) the Cayman Islands courts' approach to the timing of applications under Section 1782 in Section 238 cases.

19. In the course of this declaration, I refer to the following cases, true and correct copies of which are attached as Exhibits 1-12: *In the Matter of Nord Anglia Education, Inc.* (Unreported, 18 April 2019, FSD 235 OF 2017) **(Exhibit 1)**; *In the Matter of Trina Solar Limited*, (Unreported, Grand Court, 23 September 2020) **(Exhibit 2)**; *In the Matter* of *Shanda Games Limited* [2018 (1) CILR 352] **(Exhibit 3)**; *In the Matter of Integra Group* [2016 (1) CILR 192] **(Exhibit 4)**; *In the Matter of Homeinns Hotel Group* (Unreported, 7 February 2017) **(Exhibit 5)**; *In the Matter of Qunar Cayman Islands Limited* [(2018) (1) CILR 199] **(Exhibit 6)**; *In the Matter of Qihoo 360 Technology Co. Ltd* [2017 (2) CILR 43] **(Exhibit 7)**; *In the Matter of Qihoo 360 Technology Co. Ltd.* [2017 (2) CILR 585] **(Exhibit 8)**; *In the Matter of Qunar Cayman Islands Limited* [2017 (2) CILR 24] **(Exhibit 9)**; *In the Matter of JA Solar Holdings Co. Ltd.* (Unreported, 17 July 2019, FSD 153 of 2018) **(Exhibit 10)**; *In the Matter of Shanda Games Limited* (unreported, 25 April 2017, FSD 14 of 2016 (NSJ) **(Exhibit 11)**; *In the Matter of Qunar Cayman Islands Limited* [2019 (1) CILR 611] **(Exhibit 12)**; *In the Matter of Qihoo 360 Technology Co. Ltd*, FSD 129 of 2016 **(Exhibit 13)**.

## A. The Role of Experts in Section 238 Cases

20. In Cayman Islands appraisal proceedings, the court makes a determination of fair value as of the so-called valuation date (the "**Valuation Date**.")

21. The Cayman Islands Financial Services Division judges – who hear Section 238 cases – do not consider themselves to be experts in valuation. Instead, the judges are guided by the valuation experts instructed by the parties and with the court's leave, called to give their expert evidence and opinion.

22. This was made clear by the Cayman Islands Court of Appeal (**"CICA"**) in the *Matter of Shanda Games Limited* [2018 (1) CILR 352] (Exhibit 3). At paragraph 22, Martin JA discussed the issue as follows:

> Since the fair value is not necessarily the same as the merger price or the price at which the shares were trading before the market in them was affected by knowledge of the merger, it is inevitable that the determination will involve an assessment of a substantial quantity of information relating to the financial affairs of the company whose shares are to be valued. It is unlikely in the extreme that the court will be able to make that assessment without expert assistance. ***In the ordinary case, as in this one, both the company and any dissenting shareholders will appoint experts; but even in a case where no dissenting shareholder is prepared to participate in the litigation, the company, and perhaps also the court itself, will instruct an expert. In every case, the court's task will be to assess the utility of the expert evidence to the determination of fair value***. Carrying out that task in the context of s.238 proceedings is no different in nature from carrying it out in ordinary inter-parties litigation. ***In ordinary litigation, and in s.238 proceedings, the court will determine generally, or on an issue-by-issue basis, whether an expert's evidence is to be accepted in whole or in part and how conflicts are to be resolved. If necessary, the court is entitled to substitute its own view for that of the experts***. The process, however, is one that will be familiar to most judges. The fact that the outcome of the process in a s.238 case is capable of affecting persons other than those who participated in the litigation seems to me immaterial: shareholders who do not participate cannot complain if the fair value of their shares is determined by reference to evidence into which they have had no input.
>
> (Emphasis added).

23. The CICA's statement in *Shanda Games Limited* that "[i]t is unlikely in the extreme that the court will be able to [assess the fair value of the shares] without expert assistance" (cited above) reflects that to determine fair value, the court will be

heavily reliant on expert valuation evidence to arrive at a fair value determination under Section 238. It should be noted that the decision of the CICA in *Shanda Games Limited* was further appealed to the Privy Council, the Cayman Islands' highest court. However, the decision of the Privy Council did not modify or alter in any way the views expressed by the CICA in relation to the role of judges in Section 238 proceedings and the guidance obtained from expert evidence given by valuation experts called by the parties.

24. In *In the Matter of Integra Group* [2016 (1) CILR 192] (Exhibit 4), the first appraisal case in the Cayman Islands to go to trial, Jones J explained, at paragraph 11, that "[t]he experts are the best judge of what information is or is not relevant for their purposes." Several post *Integra* cases have acknowledged the particular role played by experts in appraisal actions and the deference they should be afforded in the performance of their duties. Indeed, in *In the Matter of Homeinns Hotel Group* (Unreported, 7 February 2017) (Exhibit 5), I ordered that the company was to discover any additional documents or information that either expert considered necessary, echoing Jones J's view "that the experts are the best judges of what is relevant when it comes to disclosure." Further, in *In the Matter of Qunar Cayman Islands Limited* [(2018) (1) CILR 199] (Exhibit 6), the, CICA plainly agreed with the view I expressed that the experts are the best judges of what is relevant when it comes to disclosure.

25. These issues also arose in *In the Matter of Qihoo 360 Technology Co. Ltd* [2017 (2) CILR 43] (Exhibit 7), in which I was again the presiding Judge. As can be seen from the below quote from paragraph 77 of my judgment in that case, Section 238 cases can be distinguished from other cases involving discovery under the ordinary rules, in light of the central role which the experts play in assisting the Court:

> In most cases to which the rules of discovery apply, relevance is determined by the pleaded issues and is not a matter of opinion. ***In a s.238 petition, by contrast, the sole issue for the court is what was the fair value of the company as at the valuation date. That is a matter for the court to determine, but the court is***

> ***informed and assisted in that task by expert opinion. Experts have a special role to play in this type of proceeding.***

(Emphasis added.)

26. At appellate level, the CICA, on the appeal from my above decision in *Qihoo* [2017 (2) CILR 585] (Exhibit 8) held, at paragraph 3, that:

> [A]lthough the task of determining the value is one for the court alone, the court will not usually be equipped to derive a value from the financial information without expert assistance. ***The consequent importance of the expert evidence means that the court must have confidence that the valuations proposed are based on sufficient information***; and that in turn means that the experts will often have to be given a substantial degree of autonomy in determining what information is needed for their valuations.

(Emphasis added.)

27. The CICA consequently held that I was entitled to reach the conclusions I had.

28. As Jones J stated in *Integra* (Exhibit 4), and I accepted in *Homeinns Hotel Group* (Unreported, 7 February 2017 (Exhibit 5), in Section 238 cases, the experts are the "best judge" of relevance. The deference afforded to experts in making their requests arises from their overriding duty to the court. As recognized by Parker J in *Qunar* [2017 (2) CILR 24] (Exhibit 9) at paragraph 39:

> The experts' overriding duty is to assist the court and that should ensure that all requests are proportionate and of relevance to the fair value issue and not any other issue. I accept there may be different approaches and what one expert considers necessary and relevant another expert may not.

## B. The Cayman Islands Courts' Approach to Evidence that Post-Dates the Valuation Date

29. On January 25, 2022, the Honourable Justice Parker of the Grand Court delivered the Directions Judgment, determining (amongst other things), that the

Valuation Date for the shares held by the Dissenting Shareholders should be December 23, 2020.

30. However, at paragraphs 23 and 24, the Hon. Justice Parker also stated:

> 23. The Dissenters have filed the Affidavit of Michael Thornton which states: (i) that there was a gap of 2 months 27 days between the EGM and the actual merger; and (ii) that during that period, the trading price of the shares in Sina's subsidiary, Weibo, increased by approximately 14%.
>
> 24. **The Court accepts that the movement in Weibo's shares is relevant**, but it does not drive a conclusion as to the correct date upon which the shares are to be valued, even if the Court assumed market value is ultimately taken into account by the expert evidence directly, or as a cross check to other valuation methods.
>
> (Exhibit 1; emphasis added.)

31. Therefore, in setting December 23, 2020, as the Valuation Date in the Appraisal Proceedings, the Grand Court did not make a determination that evidence post-dating December 23, 2020, is not relevant to the Appraisal Proceeding. To the contrary, it explicitly acknowledged that evidence post-dating the Valuation Date can be relevant to a determination of fair value under Section 238.

32. It is also standard practice that a directions order (being the order that dictates the steps the parties must take in a Section 238 proceeding and the timetable) includes provision for the expert to make information requests of the Company, including for evidence arising after the Valuation Date. In *In the Matter of JA Solar Holdings Co., Ltd.* (Unreported, 17 July 2019, FSD 153 of 2018) (Exhibit 10), the Honourable Chief Justice Smellie, at paragraph 63, stated:

> The purpose of allowing the valuation experts to make additional requests for information from the Company is so that they are able properly to assist the Court with its determination of fair value. Obviously, in the course of considering the material disclosed by the Company, the valuation experts will discover information or documents that require clarification or elucidation. Similarly, they are likely to be put on enquiry by documents that are discovered, and need to ask for further documents or information.

> The ability of the experts to properly and fully assist the Court is aided by requiring the Company to supply further information and documents. Such further materials have proven to be of significant assistance in a number of section 238 cases: see ***Shanda Games***, as but one example.

33. Indeed, in, *Homeinns Hotel Group* (Unreported, 7 February 2017) (Exhibit 5) at paragraph 22 on page 15, I ordered that the company was to discover any additional documents or information that either expert considered necessary, echoing Jones J's view "that the experts are the best judges of what is relevant when it comes to disclosure." This included evidence that arose after the Valuation Date. In that case the directions order stated (as many other cases have—see paragraph 34 below): "For the avoidance of doubt, if an Expert so requests, this may include documents, communications, materials or information produced after the Valuation Date."

34. This is the general approach of the Grand Court, which has consistently ordered that information requests can be made of the relevant company ***after*** the Valuation Date. In *JA Solar* (Unreported, 17 July 2019, FSD 153 of 2018 (ASCJ)) (Exhibit 10), the company objected to the valuation experts requesting documents, communications, materials or information produced after the Valuation Date. The Grand Court rejected the company's arguments in this regard. The dissenters argued the following, which was quoted by the Chief Justice in his judgment:

> Firstly, ***that neither the parties nor the Court should pre-judge by reference to a particular period of time, what will be relevant to the determination of fair value.*** The ***valuation experts*** will be professional people and ***will decide,*** prior to making a request, whether something they are seeking is ***relevant:*** it would not be appropriate to place limits on relevance by reference to time at this stage.
>
> Of course, it is acknowledged however, that if the Company objects to a particular request, it will no doubt write to the valuation expert to express its view and, if not agreed, under the expert request regime being proposed by the Walkers Dissenting Shareholders, the Company may apply to Court to be relieved of the obligation to respond to the request.

> ***Secondly, such an order for disclosure of post-Valuation Date material has been made in a number of previous cases.***
>
> (Emphasis added.)

35. Thereafter, at paragraph 88 of the judgment, the Court reproduced a table of nine cases prior to *JA Solar* in which the experts were able to make information requests after the Valuation Date. After hearing these submissions, the Chief Justice found (with apparent approval of the dissenters' arguments) as follows:

> I am satisfied and so direct that, if requested by a Valuation Expert, the Company shall provide documents, communications, materials or information produced after the Valuation Date and that paragraph 11 of the Draft Directions shall so provide.

36. In *In the Matter of Shanda Games Limited* (Unreported, 25 April 2017, FSD 14 of 2016 (NSJ)) (Exhibit 11), upon giving its fair value judgment, the Grand Court at paragraph 54 cited the relevant directions, including the experts' ability to request information (including documents) produced after the Valuation Date. The Grand Court made no finding that any evidence after the Valuation Date would be irrelevant. On the contrary, the Honourable Justice Segal noted at paragraph 55 that:

> It can be seen that these agreed directions establish a process that was designed to ensure that all the documents and information held by Shanda and relevant to the fair value determination were disclosed...[...]...The Directions Order also provided that all additional documents or information needed and requested by the parties' experts would also be made available within fourteen days of receipt of a request and easily accessible to them vie the data room...By this means it was envisaged that Shanda would make ***full disclosure of all relevant documents and information*** on a timely basis...
>
> (Emphasis added.)

37. Accordingly, in *Shanda*, the experts requested and relied on post-Valuation Date discovery produced by the subject company to assist the court. After interrogating the company's data and projections, the dissenters' expert sent six

information requests to Shanda and participated in a call with Shanda, thereby obtaining information after the Valuation Date of 18 November 2015. As reflected in the judgment at paragraph 100:

> Shanda provided to Mr Inglis an amended version of the March 2015 Projections (the Corrected Projections) in an email dated ***2 September 2016*** sent by Conyers Dill & Pearman, the attorneys acting for Shanda. Professor Jarrell took the view that these contained corrections to the March 2015 Projections prepared by Shanda to address a number of errors identified by Mr. Inglis.
>
> (Emphasis added.)

38. Indeed, I am not aware of any judgment of the Grand Court which found that post-Valuation Date evidence is not relevant and impermissible to the determination of fair value, solely on the basis that it post-dates the Valuation Date. Further, I understand from paragraphs 6–8 (inclusive) of the Second Declaration of Rocco Cecere, and am thereby advised and do verily believe, that paragraph 21 of the Directions Order is agreed between the parties, and orders the following with regard to experts' information requests:

> Unless the Court otherwise orders, the Company shall upload to the Data Room any additional information, documents (of whatsoever description, whether electronic, hard copy or in any other format), materials and communications (whether by email, or otherwise) and any other materials prepared or created for this purpose which are or have been in its possession, custody or power or information requested by either Expert which the Expert considers relevant for the purpose of preparing his/her own opinion ("Information Requests"). **For the avoidance of doubt, if an Expert so requests, this may include documents, communications, materials or information produced after the Valuation Date**. Such requests may be made from 14 days after the date on which the Company has completed its disclosure pursuant to paragraph 8 to 9 and the Dissenters have completed their disclosure pursuant to paragraph 36. Any Information Requests from an Expert and any responses from the Company thereto shall be in writing and shall be copied simultaneously by

> email to the Expert for the other party or parties to the email addresses notified in accordance with paragraph 3 above.
>
> (Emphasis added.)

39. Therefore, in line with the general approach of the Cayman Islands courts, the Valuation Date in the Appraisal Proceeding does not place a temporal limitation on relevance, and it is perfectly permissible for subject companies to provide, and for valuation experts to request, information relevant to fair value that post-dates the Valuation Date. If Petitioners obtain documents through these 1782 Applications that post-dates the Valuation Date, in line with the Directions Order and the general approach of the Cayman Islands courts, the Grand Court will not reject those documents for that reason alone. Instead, the Grand Court will make a determination as to their relevancy and will admit those documents if relevant to the question of fair value.

**C. The Cayman Islands Court's Approach to Valuation Methodologies**

40. In relying on experts in Section 238 cases, the Grand Court when determining fair value is not limited to using a specific type or types of valuation methodology. No specific valuation methodology or methodologies are mandated by Section 238. Rather, it is within the scope of a valuation expert's expertise to determine and adopt the valuation methodology he or she deems most appropriate to the circumstances of the case and will present that methodology to the court for its consideration. The Cayman Court thus decides fair value after deriving such assistance as it may find appropriate from the methodologies and valuations presented to it by the experts for both sides in the particular case before the Court. In *Integra* [2016] (1) CILR 192 (Exhibit 4), Jones J at paragraph 21 cited (with apparent approval) the judgment of the British Columbia Court of Appeal in *Cyprus Anvil Mining Corp -v- Dickson* (1986) 8 [B.C.L.R 145] which stated:

> .... the problem of finding fair value of stock is a special problem in every particular instance. ***It defies being reduced to a set of rules for selecting a method of valuation, or to a formula or***

> ***equation which will produce an answer with the illusion of mathematical certainty. Each case must be examined on its own facts, and each presents its own difficulties.*** Factors which may be critically important in one case may be meaningless in another. Calculations which may be accurate guides for one stock may be entirely flawed when applied to another stock.
>
> (Emphasis added.)

41. Jones J went on to analyse the possible approaches to valuation and valuation methodology and stated at paragraph 28 as follows:

> Section 238 of the Companies [Act]…does not dictate any particular valuation methodology. It is well established in both the Canadian and Delaware jurisprudence that fair value should be proved by any techniques or methods which are generally considered acceptable in the financial community and otherwise admissible in court.

42. The Court's discretion to determine what valuation methodology or methodologies it considers when determining fair value was also made clear in *In the Matter of Qunar Cayman Islands* [2019 (1) CILR 611] (Exhibit 12). Parker J stated at paragraph 70:

> ***Section 238 provides no guidance on how the court should approach its task. Whilst the court is invariably going to be assisted by expert evidence, it is not bound to follow any specific methodology or mathematical calculation. It must use its own judgment to independently reach a conclusion on the right methodology in all the circumstances to produce the fair value outcome.*** This has caused some commentators to call it 'more of an art than a science.' It is more than simply the application of mathematical formulae or economic principles.
>
> (Emphasis added.)

43. This position was echoed in *In Re JA Solar Holdings Co. Ltd.* (Unreported, 17 July 2019, FSD 153 of 2018) (Exhibit 10). Chief Justice Smellie stated at paragraph 20:

> ***It is important to note that there is no defined valuation methodology available to the Court for this purpose***, rather it is

> a question of the Court's judgment which cannot be reduced to a prescriptive formula and instead is informed by the evidence which is put before the Court.
>
> (Emphasis added.)

44. Similarly, in *In the Matter of Trina Solar Limited*, (Unreported, Grand Court, 23 September 2020) (Exhibit 2), Segal J stated at paragraph 103:

> In my view, therefore, as the Dissenting Shareholders submitted, the JCPC Shanda Advice has not established new rules of law regulating the choice of valuation methodologies to be employed by the Court in a section 238 case. ***There are a number of recognised methods for attributing a monetary value to the particular rights and obligations which shareholders of particular companies possess and it is necessary in each case to consider, with the assistance of suitably qualified experts, which method is most suitable and appropriate.*** A DCF valuation is clearly one of such methods, as the Company ultimately accepted, despite its lengthy arguments as to why market methodologies based on the Hypothetical Transaction Assumption were required after the JCPC Shanda Advice.
>
> (Emphasis added.)

45. The Respondent's suggestion that the Cayman Islands courts are limited to the use of three specific types of valuation methodology for the purpose of determining fair value, and that a "sum of the parts" ("SOTP") analysis would be impermissible, is accordingly misconceived. The Grand Court will be guided by the valuation experts to advise and opine upon the valuation methodology or methodologies that may be appropriate for the specific circumstances of any given case.

46. I also note that the Grand Court in *Trina Solar* took into account and made reference to the fairness opinion prepared by Citigroup Global Markets Inc. (Citi), the financial advisor to Trina Solar's special committee, which relied in part on a SOTP valuation. The Grand Court described this as follows, at paragraph 153(c):

> Citi had also a sum of the parts (SOTP) valuation, which calculated the value of a business by assessing the value of each

> segment of the business separately. Using this approach Citi had valued the upstream and downstream segments separately, then combined those values to estimate a value for the Company as a whole.

47. The Grand Court found, at paragraph 173, that the company's expert "established that Citi's approach with respect to its SOTP methodology was not clearly wrong or unreasonable." At no point in the judgment does the Grand Court question the relevance or suitability of a SOTP valuation. The Grand Court ultimately reached a determination of fair value by reference to weightings of 45% of merger price, 30% adjusted market price, and 25% to the DCF valuation.

48. Therefore, I disagree with Respondent's assertion in its Opposition Brief that the value of SINA's investment in TuSimple is not relevant to a determination of fair value because "Cayman courts <u>do not</u> perform the only valuation methodology (sum-of-the-parts) to which TuSimple's value is even conceivably relevant." Opposition Brief at 2(emphasis provided). Respectfully, that emphatic statement is inaccurate. There is no legal limitation from a Cayman Islands law perspective on a party seeking to introduce a type of valuation methodology (such as a sum-of-the-parts analysis) in a Section 238 case. Nor is there a requirement that the Cayman court must have used that methodology in a prior case before it could be introduced by an expert and accepted by the Cayman court.

49. Furthermore, I have looked at the Directions Judgment. There is nothing in the Directions Judgment that says that a sum-of-the-parts analysis is not accepted as a methodology. Nor would I expect there to be, since, as stated in *Trina Solar* at paragraph 103 (Exhibit 12), the position under Cayman law is that "it is necessary in each case to consider, with the assistance of suitably qualified experts, which method is most suitable and appropriate."

**D. The Cayman Islands Courts' Approach to the Timing of Section 1782 Applications**

50. The Cayman Islands' court typically expresses no view in each particular case before it as to when is the proper time for a party to commence ancillary Section 1782 proceedings in the United States. However, it was suggested by Kawaley J in *In the Matter of Nord Anglia Education, Inc.* (Unreported, 18 April 2019, FSD 235 OF 2017) (Exhibit 1) that such proceedings should be commenced sufficiently early in the context of the substantive Cayman Islands appraisal proceedings such that they do not adversely affect the timetable of those proceedings. As Kawaley J said at paragraph 23:

> However, the experience of this case strongly suggests that when this Court fixes a timetable on a Summons for Directions in section 238 cases, the parties have a duty under the Overriding Objective to explicitly address the possibility of section 1782 applications, unless it is common ground that the need to do so does not arise. While this Court cannot in general terms restrain the parties from making such applications (unless they are unconscionable), suitable standard directions should be able to avoid parallel proceedings being commenced within a timeframe which adversely affecting the timetable fixed by this Court.

51. Accordingly, Section 1782 proceedings may be commenced even before any gaps in the Company's discovery have been identified. A contrary rule would require the Dissenting Shareholders to await the completion of, and their review of, the Company's discovery in the Appraisal Proceeding before even contemplating Section 1782 actions in the United States. This would result in Section 1782 proceedings being launched at an advanced stage of the Appraisal Proceeding which would almost certainly have a significant adverse impact on the timetable set down in the Appraisal Proceeding, and the progression of the Appraisal Proceeding more generally, as criticized by Kawaley J in *Nord*.

52. Indeed, the Second Directions Judgment expressly made amendments to the factual evidence timetable in order to take account of third party discovery,

including discovery obtained and depositions taken (if ordered), as a result of the instant applications under Section 1782, as explained further in paragraph 13 of the Second Declaration of Rocco Cecere.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on June 24, 2022 at Russell Heights, Kingston, Jamaica, West Indies.

JUSTICE INGRID MANGATAL (RET'D)

Former Judge of the Grand Court of the Cayman Islands, Retired Judge of the Supreme Court of Judicature of Jamaica