1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                  SOUTHERN DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| 11 In Re OASIS FOCUS FUND LP, Petitioner, for an Order Pursuant to 28 U.S.C. 1782 to Conduct Discovery for Use in a Foreign Proceeding | Case No.:  3:22-mc-0112-BGS **ORDER:** **(1) ISSUING REPORT AND RECOMMENDATION TO GRANT TUSIMPLE'S MOTION TO QUASH** [ECF 14] |
| In re Application of QUADRE INVESTMENTS, L.P., Petitioners for an Order Pursuant to 28 U.S.C. 1782 to Conduct Discovery for Use in a Foreign Proceeding. | **ORDER GRANTING JOINT MOTION** [ECF 22] |

        TuSimple Holdings, Inc. has filed a Motion to Quash subpoenas issued pursuant to
28 U.S.C. § 1782. (ECF 14.) An Opposition and Reply have also been filed and considered
by the Court. (ECF 17-18.)

        This Report and Recommendation is submitted to Chief United States District
Judge Dana M. Sabraw pursuant to 28 U.S.C. § 636. For the reasons discussed below, **IT
IS RECOMMENDED** that the Motion to Quash be **GRANTED**.

# I.      BACKGROUND

The Court only briefly summarizes the background provided by the parties in their briefing for purposes of the general context in which this discovery is sought. Particularly significant facts are addressed in greater detail as needed for purposes of the Court's analysis below.

Petitioners Oasis Focus Fund ("Oasis") and Quadre Investments, L.P. ("Quadre") both seek discovery pursuant to 28 U.S.C. § 1782 from TuSimple Holdings, Inc. ("TuSimple" or "Respondent"). Oasis' Ex Parte Application for an Order to Take Discovery in Aid of a Foreign Proceeding (ECF 1) was previously granted in this case. (ECF 6.) Quadre's Ex Parte Application (ECF 1, Case No. 22-mc-156-BGS) had not been ruled on when all parties moved to consolidate the cases and set a joint briefing schedule. (ECF 8.) The joint motion was granted, and a briefing schedule was issued. (ECF 13.)

Oasis and Quadre (collectively "Petitioners") both seek § 1782 discovery for an Appraisal Proceeding in the Financial Services Division of the Grand Cayman Islands ("Appraisal Proceeding"). The Appraisal Proceeding was filed by SINA Corporation ("SINA") to confirm that the share price paid to SINA shareholders was fair.

Petitioners were shareholders of SINA, a Chinese company incorporated in the Cayman Islands. SINA was acquired by a majority shareholder through a Merger ("Merger") that was approved by SINA shareholders on December 23, 2020. Petitioners dissented from the merger and take the position in the Appraisal Proceeding that the share price for their holdings in SINA was severely undervalued based on TuSimple's value.

TuSimple is one of several companies that SINA held shares in at the time of the merger. Four months after the Merger, TuSimple went through an initial public offering ("IPO") that resulted in a much higher share price than was paid to the SINA shareholders and at a higher amount than the value range provided in a fairness opinion ("Fairness Opinion") obtained by an independent committee of SINA from Morgan Stanley Asia Limited ("MSAL") as part of the Merger. Petitioners assert that the undervaluing of TuSimple is reflected in the great discrepancy between the value assessed for TuSimple in

the Fairness Opinion before the Merger versus its share price when it went public after the Merger. The Appraisal Proceeding's purpose is to determine whether the SINA share price for the Merger, $43.40/share, was fair.

Petitioners' discovery requests cover an almost three-and-a-half-year period, January 1, 2018, to May 1, 2021 and seek 45 categories of documents, and deposition testimony on eight topics (ECF 14 at 5-6[1]; ECF 17 at 29 n.17 (Petitioners noting that the 45 categories includes overlap in the requests of the two Petitioners); ECF 1-10 at 5-12; ECF 1-2 at 7-15 (*Quadre* case – 22-mc-0156-BGS).)

The categories of documents and communications sought is lengthy and not easily summarized, but in general Petitioners seek all documents and communications having any connection to TuSimple's IPO or any other TuSimple transaction, or SINA, as well as all documents and communications concerning any connection or relationship between a number of named people and entities, including Charles Guowei Chao, Jinzhuo Hengbang, Bonnie Yi Zhang, Sun Dream, and SINA.[2] They also seek conflict of interest policies, anything concerning Chao or Zhang's continuation or election to TuSimple's Board, and anything Chao or Zhang has concerning the Merger or the TuSimple IPO.

Although broader than summarized here, these requests generally seem to target anything having any connection with SINA, the timing of the Merger and TuSimple's IPO, or any TuSimple transaction, anything concerning TuSimple's prior funding, and anything that might show any sort of connection at any time between certain individuals and entities, including anything showing their role in the selection of MSAL as an advisor on the Merger or Morgan Stanley & Co. LLC ("MSC") as an underwriter for TuSimple's IPO.[3]

---

[1] Unless otherwise noted, the Court cites the CM/ECF electronic pagination.
[2] The following summary of the requests is drawn from the subpoenas in the two cases. (ECF 1-10 at 5-12; ECF 1-2 at 7-15 (*Quandre* case – 22-mc-0156-BGS).)
[3] Petitioner's focus on TuSimple's IPO after the Merger is also reflected in Petitioner's own summary of the requests:

## II.   DISCUSSION

### A.   28 U.S.C. § 1782

Under 28 U.S.C. § 1782, district courts may "authorize discovery where three general requirements are satisfied: (1) the person from whom the discovery is sought 'resides or is found' in the district of the district court where the application is made; (2) the discovery is *'for use* in a proceeding in a foreign or international tribunal;' and (3) the application is made by a foreign or international tribunal or 'any interested person.'" *Khrapunov v Prosyankin*, 931 F.3d 922, 925 (9th Cir. 2019) (quoting 28 U.S.C. § 1782(a)) (emphasis added). The first and third requirements are met. Only the "for use" requirement is at issue here.

"Additionally, even where an applicant satisfies § 1782's statutory prerequisites, the district court still retains substantial discretion to permit or deny the requested discovery." *Id.* at 926 (citing *Intel Corp v. Advanced Micro Devices*, 542 U.S. 241, 264–65 (2004)). "The courts have described a wide range of potentially applicable factors to consider in making that discretionary determination," including the four factors identified by the Supreme Court in *Intel v. Advanced Micro Devices* that the parties address here. *In re*

(i) the valuation of TuSimple (and in particular, information sufficient to understand the astronomical discrepancy between TuSimple's valuation as of December 23, 2020 and its IPO valuation less than four months later on April 15, 2021); (ii) the actions taken by Mr. Charles Guowei Chao, the Company's chairman, CEO, and controlling shareholder (who orchestrated the Merger and owns SINA post-Merger through an off-shore investment vehicle), and a director and 20% beneficial shareholder of Respondent, in connection with the Merger and with respect to the TuSimple IPO; (iii) the TuSimple IPO; (iv) any post-IPO plans for TuSimple; (v) the selection of MS&Co. as a lead underwriter for the TuSimple IPO when affiliated MSAL already was engaged by SINA's Special Committee; and (vi) any coordination of timing between the TuSimple IPO and the Merger and/or between MS&Co. and MSAL and all filings made by TuSimple. The Petitioners also seek to depose a corporate representative of TuSimple.

(ECF 17 at 13 (Petitioner's summary of the discovery sought).)

*Premises Located at 840 140th Ave. NE, Bellevue, Wash.*, 634 F.3d 557, 563 (9th Cir. 2011) (citing *In re Request for Assistant from Ministry of Legal Affairs of Trinidad & Tobago*, 848 F.2d 1151, 1156 (11th Cir. 1988) *abrogated in other part by Intel*, 542 U.S. at 259).

The Court first addresses whether the "for use" requirement of the statute and then considers the discretionary factors.

### B.    "For use" in a Foreign Tribunal

"Discovery is permitted under 28 U.S.C. § 1782 if it is intended 'for use in a proceeding in a foreign or international tribunal.'" *Qualcomm Inc.*, Case No. 18-mc-80134-NC, 2018 WL 6660068, at *2 (N.D. Cal. Dec. 19, 2018) (quoting 28 U.S.C. § 1782). This requirement "focuses on the practical ability of an applicant to place a beneficial document . . . before a foreign tribunal." *Id.* (quoting *In re Pioneer Corp. for an Order Permitting Issuance of Subpoenas to Take Discovery in a Foreign Proceeding*, No. 18-mc-0037-UA, 2018 WL 2146412, at *6 (C.D. Cal. May 9, 2018)). "Thus, applicants must show that the material requested is tethered to a specific foreign proceeding and is relevant." *Id.* (citing *In re Ex Parte Application of Ambercroft Trading Ltd.*, No. 18-cv-80074-KAW, 2018 WL 2867744, at *3 (N.D. Cal. June 11, 2018) and *Rainsy v. Facebook, Inc.*, 311 F. Supp. 3d 1101, 1110 (N.D. Cal. 2018). "A party seeking discovery pursuant to § 1782 must show that the discovery sought is relevant to the claims and defenses in the foreign tribunal, and the court should be 'permissive' in interpreting that standard." *Rainsy*, 311 F. Supp. 3d at 1110 (citing *In re Veiga*, 746 F. Supp. 2d 8, 18 (D.D.C. 2010)); *see also Qualcomm Inc.,* 2018 WL 6660068, at *2 (quoting the same).

"The applicant must be in a 'position to have the [tribunal] consider that evidence' or have some 'means of injecting the evidence into the proceeding' to 'use' the evidence." *In re Pioneer Corp. for an Order Permitting Issuance of Subpoenas to Take Discovery in a Foreign Proceeding*, No. MC 18-0037 UA (SS), 2018 WL 2146412, at *6 (C.D. Cal. May 9, 2018) (quoting *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 131 (2nd Cir. 2017)). "Accordingly, 'even if discovery is useful to an applicant, the discovery will not be deemed

'for use' in a foreign proceeding unless the applicant can introduce the information as evidence in that proceeding." *Id.* at *6 (quoting *In re Sargeant*, 278 F. Supp. 3d 814, 822 (S.D.N.Y. 2017)); *see also Advanced Micro Devices, Inc. v. Intel Corp.*, No. C01-7033, 2004 WL 2282320 *2 (N.D. Cal., Oct. 4, 2004) (analyzing discretionary factors and denying request for discovery in part because the European Commission stated in amicus briefs that it did not need and would not consider any of the documents sought).

### 1.   Analysis

The Cayman Court[4] set the valuation date of the extraordinary general meeting ("EGM"), December 23, 2020. "I have concluded that on a proper interpretation of the wording of section 238 'the fair value' of the relevant shares should be determined immediately before any vote of the shareholders is held to consider … any proposed merger i.e., as at the date of the EGM." (January 25, 2022 Judgment [ECF 17-16] ¶ 30.) In its Directions Order the Cayman Court limited fact discovery to a five-year period ending on the valuation date. (May 18 Directions Order [ECF 17-18] ¶ 8.) The Cayman Court carved out an exception, "For the avoidance of doubt, if an Expert so requests, this may include documents, communications, materials or information produced after the valuation date." (*Id.* ¶ 21.)

The Cayman Court's limitations indicate to this Court that fact discovery post-valuation date would not be allowed unless an expert so requests. The Petitioners must be in a "position to have the [tribunal] consider that evidence" or have some "means of injecting the evidence into the proceeding" to "use" the evidence. *In re Accent Delight Int'l Ltd.*, 869 F.3d at 131. The only means of injecting the subpoenaed discovery into evidence would be through Petitioners' expert(s) as part of his/her valuation method. As Judge Mangatal noted, the Cayman Court is guided by valuation experts to opine and advise on

---

[4] Throughout their briefing, the parties refer to the decisions of the Grand Court of the Cayman Islands Financial Services Division as being issued by the Cayman Court. The Court follows suit in its analysis.

the valuation methodology or methodologies that may be appropriate. (ECF 17-1 at 8-9.) The Cayman Court "will be heavily reliant on expert valuation evidence to arrive at a fair value determination under Section 238." (ECF 17-1 at 9.) In every case the Cayman Court's "task will be to assess the utility of the expert evidence to the determination of fair value." (ECF 17-1 at 8 (quoting *Matter of Shanda Games Limited* [2018(1) CILR 352] (Exhibit 3)).) However, Petitioners have not offered expert requests in support of their subpoenaed discovery. (*See* ECF 17 (Petitioner's Opposition only notes experts *can* request post-valuation date discovery); ECF 18 at 7 (TuSimple's Reply accurately notes that Petitioners have not submitted a declaration from their experts stating that they intend to use TuSimple's IPO valuation in their valuation analysis).)

Petitioners claim that on January 29 and 31, 2022 they gave the Cayman Court notice of their third-party discovery applications under § 1782 against TuSimple. (Second Decl. of Rocco Cecere ("Cecere Second Declaration") ECF 17-15 at 6.) They further assert that at no time did the Cayman Court indicate it would be unreceptive to any evidence sought under § 1782. (*Id.* at 6-7.) However, there is no evidence that the Cayman Court was put on notice as to the time frame of the subpoenaed discovery as well as its contents. The Cayman Court simply allowed the dissenters to seek §1782 discovery. (*Id.* at 5-6.) There is nothing in the Cayman Court's Directions Order indicating that the subpoenaed discovery would be exempted from the above imposed limits.

The Petitioners are seeking discovery responsive to 45 subjects, spanning an almost three and a half year time span, and deposition testimony on eight topics. (ECF 14 at 5-6.[5]) According to Petitioners, the Applications seek discovery concerning,

> (i) the valuation of TuSimple (and in particular, information sufficient to understand the astronomical discrepancy between TuSimple's valuation as of

---

[5] As discussed more below, in addressing the undue burden discretionary factor, Petitioners characterize the 45 categories identified by TuSimple as "misleading" because there is overlap between some of the requests from the two petitioners. (ECF 17 at 29 n.17.) However, Petitioners do not dispute there are 45 categories of documents sought.

December 23, 2020 and its IPO valuation less than four months later on April 15, 2021); (ii) the actions taken by Mr. Charles Guowei Chao, the Company's chairman, CEO, and controlling shareholder (who orchestrated the Merger and owns SINA post-Merger through an off-shore investment vehicle), and a director and 20% beneficial shareholder of Respondent, in connection with the Merger and with respect to the TuSimple IPO; (iii) the TuSimple IPO; (iv) any post-IPO plans for TuSimple; (v) the selection of MS&Co. as a lead underwriter for the TuSimple IPO when affiliated MSAL already was engaged by SINA's Special Committee; and (vi) any coordination of timing between the TuSimple IPO and the Merger and/or between MS&Co. and MSAL and all filings made by TuSimple. The Petitioners also seek to depose a corporate representative of TuSimple.

(ECF 17 at 13 (Petitioner's summary of the discovery sought).)

The Cayman Court held that

The expressed intention of the Dissenters to invoke the entitlement to be paid 'the fair value' for their shares crystallizes immediately before the EGM by their objection to the merger. It is at that stage that the shareholders are assessing their rights. As a consequence, it seems to me that this is the correct date on which the issue of 'the fair value' should be determined i.e., the date of the EGM. Taking that point in time as the Valuation Date will not be affected by matters which relate to or may be attributed to the enhancement or diminution of value by reference to events which occur subsequently and are to have no part in the calculation.

(January 25, 2022 Judgment [ECF 17-16] ⁋ 34.)

Here, the Cayman Court expressly states that enhancement of the value of the shares by reference to events that occur after the EGM has no part in the calculation. To the extent Petitioners are requesting discovery that concerns TuSimple post-EGM, it is foreclosed by the Cayman Court.

The Cayman Court further stated that "the valuation in the context of section 238 is a *non-conduct specific, accounting/valuation-led exercise*." (*Id.* ⁋ 40 [ECF 17-16 at 12] (emphasis added).) Petitioners argue that "Justice Parker was simply describing a distinction between the nature and purpose of unfair prejudice actions on one hand . . . and the nature of Section 238 appraisal proceedings on the other." (Cecere Second Declaration,

ECF 17-15 at 15; *see also* ECF 17 at 17-18 (disputing TuSimple's assertion that Petitioners are trying to pursue a conduct-driven theory beyond the scope of the Appraisal Proceeding).) Petitioners also assert "[t]here is no suggestion in the Directions Judgment that only accounting/valuation issues are relevant to a fair value determination. (Cecere Second Declaration, ECF 17-15 at 16.)

It is clear to this Court that the Cayman Court's comment limits the valuation process to a non-conduct specific accounting/valuation lead exercise. Further, Justice Parker never indicated the analysis was to be otherwise.[6] Given the explicit comments by the Cayman Court, this Court finds that unless the above conduct-driven discovery is specifically requested by the Petitioners' valuation expert(s), it would not be used by the Cayman Court as regards its fair value analysis. As stated repeatedly by Justice Mangatal (Ret'd), "experts are the best judges of what is relevant when it comes to disclosure." (ECF 17-1 at 9 (quoting *In the Matter of Homeinns Hotel Group* (unreported, 7 February 2017)).) Experts will often have to be given substantial degree of autonomy in determining what information is needed for their valuation. (*Id.* at 10.) Information requests post valuation date can be made if the expert considered the information necessary. (*Id.* at 12.) Although the Cayman Court left open its discovery deadline to expert-requested discovery, Petitioners have not produced any such expert requests for the subpoenaed discovery.

In addressing post-valuation date discovery, Petitioners also argue in a footnote that Federal Rules of Civil Procedure 45 and 26 do not support quashing the subpoenas. Petitioners argue their subpoenas meet the Rule 26 standard of "being nonprivileged matter

---

[6] Petitioners argue, based on two unreported decisions cited, that Cayman courts have undertaken analysis of conduct and process related documents and information relevant to the question of whether the deal price was a reliable proxy of fair value. (Cecere Second Declaration, ECF 17-15 at 15.) However, this Cayman Court has indicated such discovery is not part of the valuation in the context of section 238. The Cayman Court only left the door open if Petitioners' expert(s) requested such information for valuation purposes.

that is relevant to any party's claim or defense and proportional to the needs of the case." (ECF 17 at 16 (quoting *Kellgren v. Petco Animal Supplies, Inc.*, No. 13CV0644-L(KSC), 2015 WL 11237636, at *2 (S.D. Cal. Apr. 10, 2015)).) The Court notes that Rule 26(b) goes on to explain proportionality considers, among other factors, "the importance of the discovery in resolving the issues."

According to Petitioners, MSAL valued SINA's interest in TuSimple to be worth a low value of $186 million to a high value of $1.2 billion. TuSimple went public on April 15, 2021 at a valuation of nearly $8.49 billion. Petitioners contend that the merger consideration severely undervalued their former shareholdings in SINA. (ECF 17 at 11.) This appears to be the underlying basis for their discovery requests. (*See* Cecere Second Declaration 17-15 at 18 (Arguing that "evidence that 'TuSimple delayed its IPO in order to drive down SINA's Merger price' and not 'far beyond the scope of an appraisal action.'").

According to TuSimple, the value of SINA's investment in TuSimple had no impact on the six of the seven methodologies used to value SINA at the time of the Merger. Further, TuSimple had only a minimal effect (5%) on a single variation of the seventh methodology, "sum of the parts." (ECF 14 at 5.) The Fairness Opinion mentioned TuSimple only once, as one of nine companies that contributed about 10% of the overall value of SINA's long-term investment portfolio. (*Id.* at 8.) The Fairness Opinion did not mention TuSimple in connection with any other valuation method. (*Id.*)[7]

Petitioners admit that "[i]n the Appraisal Proceeding the Cayman court will decide fair value based on methods and valuations presented to it by the Dissenting Shareholders' and Company's experts." (ECF 17 at 17 n.8.) And, as previously discussed and noted by Judge Mangatal, the Cayman Court is guided by valuation experts to opine and advise on

_____

[7] The independent committee of SINA's board engaged investment bank MSAL to provide the Fairness Opinion which concluded that the merger was fair to the shareholders. (ECF 14 at 7)

1  the valuation methodology or methodologies that may be appropriate. (ECF 17-1 at 8-9.)

2  The Cayman Court "will be heavily reliant on expert valuation evidence to arrive at a fair

3  value determination under Section 238." (ECF 17-1 at 8-9.) "In every case the court's task

4  will be to assess the utility of the expert evidence to the determination of fair value." (*Id.*

5  at 8 (quoting *Matter of Shanda Games Limited* [2018 (1) CILR 352] (Exhibit 3)).)

6      The Cayman Court has indicated that it was heavily reliant on the evidence from the

7  parties' valuation experts. (January 25, 2022 Judgment [ECF 17-16] ¶ 74.) The Petitioners

8  have indicated that in this case a valuer *may* consider it appropriate to perform a sum-of-

9  the-parts valuation analysis which involves valuing each of the underlying businesses

10 separately and then aggregating them to determine the valuation of the overall Company.

11 (ECF 17 at 17.)[8] Assuming Petitioner wishes to conduct a sum-of-the-parts valuation, then,

12 according to the Cayman Court's Order, their expert is free to request whatever discovery

13 he/she deems relevant to that valuation analysis. The same holds true for any valuation

14 method he/she chooses.

15     In sum, Petitioners have failed to connect the requested discovery to an expert's

16 valuation method. As indicated above, the Petitioners have not provided any expert

17 requests for this discovery. Nor have Petitioners even explained how an expert would

18 utilize the discovery requested in his/her valuation method(s). Therefore, taking into

19 account that the experts decide the valuation methods which the Cayman Court will heavily

20 rely upon, and the Petitioners' failure to provide any expert requests for the subpoenaed

21 discovery, the subpoenaed discovery is also not proportional to resolving the valuation

22 issue.[9]

---

25 [8] Petitioners have indicated they have not decided on valuation methods nor on their
26 experts. (ECF 17 at 17, n.8.)

27 [9] The Court does note that if Petitioners had an expert request that permitted this
   discovery beyond the Valuation Date and an expert explanation that provided a
   connection between these discovery requests and a sum-of-the-parts analysis that might
28 actually be used, the Court would likely find the for use requirement met for at least some

The Court finds the "for use" statutory requirement is not met. However, even if this statutory requirement were met, the Court would still not order the discovery based on the discretionary factors discussed below. *Intel*, 542 U.S. at 264 ("[A] district court is not required to grant a § 1782(a) discovery application simply because it has the authority to do so.").

## C.  Discretionary Factors

Even when the statutory requirements of § 1782 "are met, a district court still retains the discretion to deny a request." *In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.*, 634 F.3d 557, 563 (9th Cir. 2011) (citing *Intel*, 542 U.S. at 264). The courts have "broad discretion to determine whether, and to what extent, to honor a request for assistance under 28 U.S.C. § 1782." *Id.* (quoting *Four Pillars Enters. Co v. Avery Dennison Corp.*, 308 F.3d 1075, 1078 (9th Cir. 2002) and citing *In re Clerici*, 481 F.3d, 1324, 1331 (11th Cir. 2007), *Edelman v. Taittinger (In re Edelman)*, 295 F.3d 171, 181 (2nd Cir. 2002), and *Al Fayed v. United States*, 210 F.3d 421, 424 (4th Cir. 2000)).

"The courts have described a wide range of potentially applicable factors to consider in making that discretionary determination." *Id.* (citing *In re Request for Assistant from Ministry of Legal Affairs of Trinidad & Tobago*, 848 F.2d 1151, 1156 (11th Cir. 1988) *abrogated on other grounds by Intel*, 542 U.S. at 259). In *Intel Corp. v. Advanced Micro Devices*, the Supreme Court identified four factors that "bear consideration" in exercise of this discretion: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding;" (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance;" (3) whether the "request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of

of the requests. Additionally, as discussed in some detail below, this would also likely impact a number of the discretionary factors that currently weigh against Petitioners.

a foreign country or the United States;" and (4) whether the request is unduly intrusive or burdensome." *Intel*, 542 at 264-265.

### 1. Participation of Target in the Foreign Proceeding

TuSimple argues the discovery Petitioners seek is available to them directly or through SINA, a participant in the Appraisal Proceeding. (ECF 14 at 15.) TuSimple explains that the MSAL Fairness Opinion is publicly available and that to the extent anyone at TuSimple communicated with anyone at SINA about the Fairness Opinion, the information would be obtainable from SINA in the Appraisal Proceeding. (ECF 14 at 15; ECF 18 at 9.) Put another way, TuSimple argues this factor weighs in their favor because Petitioners could get what they are asking TuSimple for in the Appraisal Proceeding themselves. (ECF 18 at 9.) Petitioners argue this is the wrong question, asserting that this factor only considers whether TuSimple itself is a participant in the foreign proceeding, not whether the discovery can be obtained from a participant in the foreign proceeding. (ECF 17 at 20.) Petitioners do not dispute that some of the discovery they seek could be obtained in the Appraisal Proceeding, but indicate that many of the categories of documents are not publicly available and only obtainable from TuSimple. (ECF 17 at 21.)

"The first factor considers whether the person from whom discovery is sought is a party to the foreign proceeding, . . . [h]owever, 'the key issue is whether the material is obtainable through the foreign proceeding." *Medical Inc. Ass'n Smile Create*, 547 F. Supp. 3d 894, 898 (N.D. Cal. July 8, 2021) (citing *In re Varian Med. Sys.*, Case No. 2016 WL 1161568, at * 3 (N.D. Cal. Mar. 24, 2016) and quoting *Intel*, 542 U.S. at 247).

The cases TuSimple relies on find this factor weighs against requiring production of discovery from a non-party to the foreign proceeding when that discovery sought could be obtained in the foreign proceeding. *In re Ex Parte LG Electrs. Deutschland GmbH*, No. 12cv1197-LAB (MDD), 2012 WL 1836283, at *2 (S.D. Cal. May 21, 2012) (finding first factor weighed against granting the discovery under § 1782 because the petitioner had not explained why it could not obtain the discovery sought in the foreign actions); *In re Ex Parte Apple Inc.*, Civil No. 15cv1780 BAS (RBB), 2015 WL 5838606,

at *4 (S.D. Cal. Oct. 7, 2015) (finding first factor weighed against ordering § 1782 discovery when they failed to show the information could not be obtained from a party to the foreign litigation); *In re Judicial Assistance Pursuant to 28 U.S.C. § 1782 by Macquarie Bank Ltd.*, No. 2:14-CV-0797-GMN, 2015 WL 3439103, at *7 (D. Nev. May 28, 2015) ("Although the case law at times refers to whether the 'person' is within the foreign tribunal's jurisdictional reach, the key issue is whether the material is obtainable through the foreign proceeding.").

Petitioners rely on cases that state that this factor favors ordering the discovery when the respondent is not a party to the foreign proceeding. *In re Koninklijke*, 17-MC—1681-WVG, 2018 WL 620414, at * 2 (S.D. Cal. Jan. 30, 2018); *In re Ex Parte Application of Smith*, 2012 WL 12885234, at *2 (S.D. Cal. Oct. 9, 2012); *In re Will Co. Ltd.*, Case No. 21-mc-80211-JCS, 2021 WL 5322653, at * 2 (N.D. Cal. Nov. 16, 2021). However, unlike the cases relied on by TuSimple, these cases do not address whether the discovery could be obtained in the foreign proceeding or if that would be considered under this factor. For example, in *In re Koninklijke*, the court simple states in two sentences that (1) respondent is not a party to the foreign proceeding and (2) this factor weighs in favor of granting. 2018 WL 620414, at *2; *see also In re Ex Parte Application of Smith*, 2012 WL 12885234, at *2 (same); *In re Will Co. Ltd.*, 2021 WL 5322653, *2 (relying on the exclusion of the respondent as a party or potential party and then indicating the factor weighed in favor of granting the discovery). While there is no particular error in this when the issue presented here was not raised in those cases, these cases do not provide any guidance on how the availability of discovery in the foreign proceeding through a party to that proceeding impacts this factor.

The additional § 1782 cases cited by Petitioners that touched on whether the availability of the discovery sought under § 1782 in the foreign proceeding impacted this factor are distinguishable.  *In re Top Matrix Holdings Ltd.*, 2020 WL 248716, at * 5 (S.D.N.Y. Jan. 16, 2020) (no foreign proceeding has yet been filed and court focused on whether the respondents were within the jurisdiction of a foreign court); *In re Pidwell*,

1:21-MC-0166 (ALC)(KHP), 2022 WL 192987, at *5 (S.D.N.Y. Jan. 21, 2022) (focused exclusively on the whether the respondent was an actual named party in the foreign court and addressing whether parent companies of non-U.S. participants in foreign proceedings were separate legal entities for purposes of this analysis). Petitioners also point to non-§ 1782 cases in which courts have ordered responses to discovery requests seeking the same or similar information from multiple sources for purposes of testing the accuracy or completeness of the productions and only one § 1782 case. (ECF 17 at 20-21 (citing *Thomas v. City of New York*, 336 F.R.D. 1, 3 (E.D. N.Y. 2020) (non-§ 1782 case), *Jiae Lee v. Dong Yeoun Lee*, No. CV198814JAKPVCX, 2020 WL 7890868, at *8 (C.D. Cal. Oct. 1, 2020)(non-§ 1782 case), *LG Display Co., Ltd v. Chi Mei Optroelectronics Corp.*, Civil No. 08cv2408-L(POR), 2009 WL 223585, at *3 (S.D. Cal. Jan. 28, 2009)(non-§ 1782 case), and *FourWorld Event Opportunities, LP v. Houlihan Lokey, Inc.*, No. 21-mc-1019, ECF No. 56 (C.D. Cal. Jan. 6, 2022), ECF No. 60 (C.D. Cal. Jan. 10, 2022).)

While the Court may agree that there might be limited circumstances warranting ordering duplicative discovery,[10] the reasoning behind this factor, as discussed further below, considers whether a foreign court "can itself order them to produce evidence" and if the "evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Intel*, 542 U.S. at 264. The Court is not inclined to add consideration of the necessity of ordering duplicative discovery into the calculation of this factor.

///

///

---

[10] Given Petitioners reliance on non-§ 1782 cases for this point, the Court notes as a general matter that while duplicative discovery might be necessary under particular circumstances, Rule 26(b)(2) provides that "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that (1) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive."

The cases TuSimple relies on are more in line with this case. In *Ex Parte LG Electronics* the court acknowledged, "on first blush, it appear[ed] that this factor would weigh in favor of" petitioner because the respondent was not a party to the foreign cases. 2012 WL 1836283, at *2. However, the court goes on to consider, in an exercise of its discretion, whether the petitioner "ha[d] availed itself of discovery procedures in the foreign forum." *Id.* (citing *In re Degitechnic*, 2007 WL 1367697 at *4 (W.D. Wash. 2007). Like Petitioners here, a petitioner was seeking discovery under § 1782 from an entity that was not a party to the foreign actions rather than seeking the discovery from a party in those actions. *Id.* The court acknowledged § 1782 did not have an exhaustion requirement but still found this factor weighed against the petitioner because there was no explanation why the information sought was not obtained in the foreign cases. *Id.*

This is consistent with the reasoning in *Intel* on this factor. 542 U.S. at 264. Although the *Intel* court was drawing a distinction between a participant or nonparticipant in the foreign proceeding, the reasoning is based on whether the discovery sought under § 1782 is "unobtainable absent § 1782(a) aid." *Id.*; *see also Medical Inc. Ass'n Smile Create*, 547 F.Supp.3d at 898 (acknowledging the first factor considers whether the respondent is a party to the proceeding, but finding "the key issue is whether the material is obtainable through the foreign proceeding.") (internal quotations omitted). Based on this reasoning, this factor weighs against ordering TuSimple to produce the requested discovery under § 1782, at least as to the discovery that might be obtained publicly or from SINA.

Additionally, the *Intel* factors are non-exclusive, and the Court has discretion in determining whether to grant an application under § 1782. *Id.* ("We note below factors that *bear consideration* in ruling on a § 1782(a) request.") (emphasis added) Given these are not the only factors the Court can consider and the discretion afforded the Court, even if the Court viewed this factor as only considering if the respondent is a participant or not a participant, the obtainability of the discovery from a party in the foreign proceeding would still weigh against granting the discovery.

1    Petitioners do argue generally that some of the requested discovery could only be
2    obtained from TuSimple. However, it is unclear to the Court, particularly without any
3    references to any one of the 45 document requests at issue, which specific requests are
4    encompassed. As explained above (*see* Section I) and analyzed below (II.C.3), these
5    requests are broad. Accordingly, the Court finds that this factor weighs in favor of
6    TuSimple based on most of the requests being obtainable from a party to the foreign
7    proceeding. To the extent Petitioners have requests that cannot be obtained from a party
8    in the foreign proceeding, Petitioners have not specifically identified which requests they
9    are.

10        **2.      Receptivity of Foreign Tribunal to U.S. Judicial Assistance and**
11            **Circumventing Proof-Gathering Restrictions**

12        Given the overlap in the parties' arguments on the second and third factors, the
13   court analyzes them together.

14        The primary dispute between the parties as to these two factors is whether the
15   discovery Petitioners seek from TuSimple conflicts with the Cayman Courts rulings.
16   (ECF 14 at 16-17 (TuSimple arguing "[t]here is no reason to believe that the Cayman
17   Court would be receptive to having a U.S. Court issue discovery that conflicts with the
18   Cayman Court's own rulings."); ECF 17 at 23-24 (Petitioners arguing there is no conflict
19   because "the Cayman [C]ourt specifically permits the parties' experts to make
20   Information Requests for discovery that post-dates the Valuation Date [and] anticipates
21   parties seeking assistance under § 1782" based on the Cayman Court being notified of
22   these proceedings and accommodating § 1782 discovery).) In addressing Petitioner's
23   argument regarding experts, TuSimple argues Petitioners are attempting to obtain fact
24   discovery beyond the deadline set by the Cayman Court based on possible expert use of
25   it, with no indication an expert will. (ECF 18 at 6-7, 12-13.) This, TuSimple argues is
26   compounded by the lack of indication that TuSimple would be relevant in a sum-of-the-
27   parts analysis, and that's assuming anyone chose to do a sum-of-the-parts analysis at all.
28   (ECF 18 at 7.)

1    More specifically, TuSimple points to the conflicts in Petitioners seeking discovery
2    extending into mid-2021 when the Cayman Court found the Valuation Date was
3    December 23, 2020 with Petitioners arguing the Cayman Court's allowance for
4    information requests post-Valuation Date by experts means the Cayman Court would be
5    receptive to all the discovery that post-dates December 23, 2020. (ECF 17 at 23-24.)
6    TuSimple also distinguishes this case from those relied on by Petitioners requiring
7    "authoritative proof" the foreign tribunal would be unreceptive, because here "the
8    Cayman Court expressly held the parties could not seek discovery created after the
9    Valuation Date" and "[a]llowing Petitioners to obtain the same discovery, in spite of that
10   Order, would be inconsistent." (ECF 18 at 11.) Petitioners argue the Cayman Court's
11   awareness of an accommodation of § 1782 request demonstrate the Cayman Court's
12   receptivity to the discovery. (ECF 17 at 24.)

13   Additionally, TuSimple argues the discovery requests are an attempt to obtain
14   documents and communications from TuSimple "that the Cayman Court already has held
15   are . . . subject to PRC law requiring regulatory approval before production." (ECF 14 at
16   17.) TuSimple asserts that this is an attempt to undercut the Cayman Court's Order
17   deferring to these regulators. (ECF 14 at 17.) Petitioners argue it is not clear why a
18   variety of TuSimple's internal documents would be subject to PRC data protection laws.
19   (ECF 17 at 25.)

20   The second "factor focuses on whether the foreign tribunal is willing to consider
21   the information sought." *Medical Inc. Ass'n Smile Create*, 547 F. Supp. 3d at 898
22   (quoting *In re Varian Med. Sys.*, 2016 WL 1161568); *see also Intel*, 542 U.S. at 264
23   ("[A] court presented with a § 1782 request may take into account the nature of the
24   foreign tribunal, the character of the proceedings underway abroad, and the receptivity of
25   the foreign . . . court . . . to U.S. federal-court judicial assistance."). "If there is reliable
26   evidence that the foreign tribunal would not make any use of the requested material, it
27   may be irresponsible for the district court to order discovery, especially where it involves
28   substantial costs to the parties involved." *Id.*

1    The third factor "consider[s] whether [Petitioners] request[s] for discovery
2 'conceal an attempt to circumvent foreign proof-gathering restrictions or other policies of
3 a foreign country or the United States." *Id.* at 899 (citing *Intel*, 542 U.S. at 265). "A
4 perception that an applicant has side-stepped less-than-favorable discovery rules by
5 resorting immediately to § 1782 can be a factor in the court's analysis." *Id.* (citing *In re*
6 *Varian Med. Sys.*, 2016 WL 1161568); *see also In re Gilead Pharmasset LLC*, 2015 WL
7 1903957, *4 (D. Del. Apr. 14, 2015) (collecting cases finding the same).

8    The Court agrees with Petitioners that as a general matter Cayman courts might be
9 receptive to *some* of the types of discovery Petitioners request here. However here, the
10 Court is not considering it in such a generalized manner or on a blank slate. As discussed
11 at length above, (*see* Section II.B.1), the Cayman Court has issued orders setting limits and
12 parameters, including the Valuation Date as an outside point for discovery with the only
13 exception being requests made by experts, and there are no such requests here. While the
14 Cayman Court may not have issued an order explicitly saying no to all 45 categories of
15 documents Petitioners seek here, the Court cannot ignore the parameters and limitations
16 the Cayman Court set in considering whether it would be receptive to this discovery or if
17 these broad discovery requests are an attempt to obtain information unrelated to valuation
18 and after the Cayman Court's December 23, 2020 date. Nor can the Court interpret the
19 Cayman Court's allowance for expert requests post-December 23, 2020 as an indicator the
20 Cayman Court is receptive to these broad requests, particularly in the absence of any expert
21 request.

22    Additionally, as also discussed above (*see* Section II.B.1), while the Cayman Court
23 may have had notice that Petitioners were generally seeking § 1782 discovery, there is
24 nothing indicating that Petitioners are seeking discovery beyond the Valuation Date
25 without any expert request. As discussed above, allowing Petitioners to seek § 1782
26 discovery in general does not mean the Cayman Court would be receptive to discovery that
27 exceeds the limits the Cayman Court set. The Cayman Court simply allowed Petitioners to
28 seek §1782 discovery, not § 1782 discovery beyond the limits imposed by the Court.

Whether these discovery requests are an attempt to circumvent the Cayman Court's ruling as to PRC approval is less clear. Tu Simple argues "Petitioners also have asked this Court to order the production of emails sent to or from the PRC even though the Cayman Court previously held that SINA can and should obtain approval from the Beijing Municipal Cyberspace Administration before producing such documents." (ECF 14 at 16). Petitioner characterizes the Cayman Court as giving SINA time to address PRC approvals and generally questions why a variety of TuSimple's internal documents would be subject to any PRC approvals. (ECF 17 at 25.) TuSimple did not address Petitioner's second argument in its Reply. (ECF 18 at 10-11.)

As noted above, one of the challenges with the parties' arguments here is the breadth of Petitioners' discovery requests and the lack of specificity in the briefing as to which requests would and would not be subject to PRC approval as the Cayman Court has directed the parties abide by or accommodate. For example, "All Documents and Communications received by, sent by, or mentioning SINA, Sun Dream, Mr. Charles Chao, or Ms. Bonnie Yi Zhang" has a greater likelihood to implicate these approvals than "financial statements and accounts of TuSimple." (ECF 1-2 in 22cv156-BGS case ¶¶ 11, 19.)

Given the vagueness of both parties' briefing on this point, the Court can determine only that these two factors weigh against ordering the discovery to the extent the requests seek discovery that would be subject to this PRC approval process. However, to the extent the discovery requests do not implicate this approval process and are otherwise not in conflict with the Cayman Court's rulings, as discussed above, these factors weigh in favor of ordering their production.

Although there might conceivably be some discovery requests that do not conflict with the Cayman Court's orders, the Court finds in general the second and third factors weigh against ordering the requested discovery under § 1782.

### 3.   Unduly Intrusive and Burdensome

TuSimple characterizes the discovery requests as encompassing more than three years, forty-five categories of documents, and eight categories of deposition topics. (ECF

14 at 18.) It then argues these requests are disproportionate to the single reference to TuSimple in the 55-page valuation presentation. (*Id.*) TuSimple additionally argues the sought discovery is even more tenuous because its only connection is based on a valuation method the Cayman Court does not use. (*Id.*) TuSimple also again points to the availability of the discovery Petitioners seek from TuSimple through SINA, if permitted by regulators, and then additionally argues the requests are unduly burdensome because the discovery responses would have to be transported to the PRC for review before then going to the Cayman Court. (ECF 14 at 18.) TuSimple also argues the burden on TuSimple is increased because any production of documents in the PRC could expose it to sanctions. (ECF 14 at 19.)

Petitioners argue that because the scope of discovery in the Appraisal Proceeding is broad these requests are reasonable, and that the requests are typical of requests in these types of cases. (ECF 17 at 28-29.) Petitioners argue TuSimple has failed to identify the burden imposed and any burden imposed by the scope "are the sort of discovery disputes this Court expects parties to resolve in good faith negotiation in the first instance." (ECF 17 at 30.)[11] Petitioners characterize TuSimple's concerns about transporting responsive documents to the PRC as "a mélange of pure speculation," point to a variety of TuSimple's internal documents that should not need to be transported anywhere, and challenge TuSimple's concerns about PRC sanctions as a "vague and unsupported assertion." (ECF 17 at 30-31.)

TuSimple points out in Reply that Petitioners did not attempt to defend the length and breadth of the requests except to identify some overlap between each Petitioner's subpoenas and argues Petitioners' assertion that the requests are "typical" does not address the inquiry under *Intel*, burden. (ECF 18 at 12.) Additionally, TuSimple argues § 1782 requests that are not narrowly tailored and resemble a fishing expedition for

---

[11] Petitioners also point to invitations from Petitioner Oasis to discuss areas of common ground prior to TuSimple filing a Motion to Quash. (ECF 17 at 30.)

1   irrelevant information should be denied. (ECF 18 at 12 (citing *In re Ex Parte Appl. Of*

2   *Qualcomm, Inc.*, 162 F. Supp. 3d 1029, 1044 (N.D. Cal. 2016)).) TuSimple's Reply does

3   not revisit its arguments regarding the handling of documents in relation to the PRC or

4   exposure to sanctions. (ECF 18 at 11-12.)

5          Under the final factor, the Court considers whether the discovery sought is "unduly

6   intrusive or burdensome." *Intel*, 542 U.S. at 265. "[U]nduly intrusive or burdensome

7   requests may be rejected or trimmed." *Intel*, 542 U.S. at 265. "Requests are unduly

8   intrusive and burdensome where they are not narrowly tailored, request confidential

9   information and appear to be a broad 'fishing expedition' for irrelevant information." *In*

10  *re Ex Parte Application of Qualcomm Inc.*, 162 F. Supp. 3d at 1042-43 (citing *Matter of*

11  *Application of 02CNI Co. Ltd.*, Case No. C 13-80125 CRB (LB), 2013 WL 5826730, at

12  *15-16 (N.D. Cal. Oct. 29, 2013)); *see also In re Komanokai*, Case No. 4:20-mc-80149-

13  KAW, 2020 WL 6684565, at *3 (Nov. 12, 2020) ("Even if the applicant satisfies the

14  discretionary factors, 'a request should be denied if the court suspects that the request is a

15  fishing expedition or a vehicle for harassment.'").

16         Additionally, "[t]he proper scope of discovery arising out of a § 1782 application is

17  generally determined by the Federal Rules of Civil Procedure." *In re Komanokai*, 2020

18  WL 6684565, at *3 (quoting *In re Raiffeinsenbank*, Case No. 16-mc-80203-MEJ, 2016

19  WL 6474224, at *6 (N.D. Cal. Nov. 2, 2016)); *In re Hapag-Lloyd Aktiengesellschaft*,

20  Case No. 21-mc-80107-LB, 2021 WL 1899928, *3 (N.D. Cal May 12, 2021) ("Courts

21  look to the Federal Rules of Civil Procedure to determine the proper scope of discovery

22  in a § 1782 application."); *Digital Shape Techs., Inc. v. Glassdoor, Inc.*, Case No. 16-mc-

23  80150-JSC, 2016 WL 5930275, at *4 (N.D. Cal. Oct. 12, 2016) (same); *see also In re*

24  *Letters Rogatory From Tokyo Dist. Prosecutor's Office*, 16 F.3d 1016, 1019 (9th Cir.

25  1994) (Concluding that the Federal Rules of Civil Procedure apply to § 1782 requests

26  absent a specification that other procedures be followed).

27         This means "an applicant . . . must show that the discovery is relevant to the claims

28  and defenses in the foreign tribunal." *In re Hapag-Lloyd Aktiengesellschaft*, 2021 WL

1899928, at *3 (citing *Rainsy*, 311 F. Supp. 3d at 1110). "Relevancy, for purposes of discovery, is defined broadly, although it is not without ultimate and necessary boundaries." *Digital Shape Techs.*, 2016 WL 5930275, at *3 (quoting *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 679-80 (N.D. Cal. 2006)). A Rule 45 "subpoena is subject to the relevance requirements set forth in Rule 26(b)." *Kellgren v. Petco Animal Supplies, Inc.*, No. 13CV0644-L(KSC), 2015 WL 11237636, at *2 (S.D. Cal. Apr. 10, 2015), being "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The requested discovery must be proportional to the needs of the case, including the importance of the discovery in resolving the issues.

As an initial matter, the Court is not persuaded by TuSimple's speculation regarding burden based on the PRC. While the concerns raised are certainly conceivable, particularly given the breadth of discovery sought, TuSimple has not provided the Court with sufficient authority or case law establishing a burden on that basis. The Court does, however, find these discovery requests are unduly burdensome, not narrowly tailored, and to the extent some of the requests might seek relevant information, they are not proportional.

As noted in the Court's discussion throughout, as well as explained above (*See* Section I), Petitioners' requests are broad not only in the time period they cover, but in the subjects covered. They cover an almost three-and-a-half-year period including a period after the Valuation Date set in the Appraisal Proceeding, covering forty-five categories of documents. To the extent the requests could be said to have a focus, it is on TuSimple's IPO and almost anything having to do with any part of it despite, as discussed above, the IPO post-dating the Cayman Court's Valuation Date ruling. Additionally, in seeking any communication showing any connection between a variety of people and entities over such a lengthy period of time, Petitioners appear to be fishing for any possible impropriety based on nothing more than the timing of an IPO filing.

Even if some of this discovery might conceivably be relevant, the vast scope of these requests is not proportional.

There is also the tenuousness of the connection to SINA's share price at all through the single reference to TuSimple in the Fairness Opinion. The Court recognizes that the proceeding is not necessarily limited by the Fairness Opinion and the Court is willing to assume that the single reference and the simple fact that SINA was a large shareholder of TuSimple, is sufficient to seek some discovery from TuSimple. If SINA's share price was based in part on the value of TuSimple, then information on the value of TuSimple might be relevant to the Cayman Court's valuation.

However, the requests go far beyond TuSimple's value at the time of the Merger. Even assuming an expert did conduct a sum-of-the-parts analysis (the only valuation that would implicate TuSimple at all) and assuming that analysis was based on TuSimple's financial position, it would seem to be TuSimple's financial position at the time of the Fairness Opinion or the Merger, not later, that would be relevant. This in itself is a bit speculative without any expert performing this analysis, but in this respect, the Court recognizes that some of these requests for financial information or analysis regarding TuSimple's financial condition at that time could theoretically provide relevant information. However, as noted above, Petitioners have not provided an explanation from an expert how these broad requests would even relate to a sum-of-the-parts analysis. "[T]hey are not narrowly tailored" to important issues in the Appraisal Proceeding. *In re Ex Parte Application of Qualcomm Inc.*, 162 F. Supp. 3d at 1042-43 ("Requests are unduly intrusive and burdensome where they are not narrowly tailored.").

Petitioners also seem to fall back on the idea that the requests could just be trimmed or narrowed rather than denied. Petitioners rely on the Court's expectation that parties will engage in good faith negotiation to narrow the scope of unduly burdensome discovery and attempt to blame TuSimple for not negotiating the requests with them. To be clear, the parties should attempt to resolve any dispute regarding the scope of discovery they can, but that does not allow Petitioners to request broad and unduly

24

burdensome discovery that is not tailored to the actual issues in the Appraisal Proceeding and then blame TuSimple for not negotiating their scope. Nor is it the Court's responsibility to attempt to itself narrow these overbroad requests to the scope of the Appraisal Proceeding. While the Court is certainly aware that it has the authority and discretion to do so, in this instance, the requests are simply too overbroad for the Court to engage in the process. None of the parties have addressed any of the forty-five requests or eight deposition topics specifically enough that the Court could pick out the few that might be relevant. Additionally, given the Court's finding that the for use requirement is not met and that each of the other three factors does not favor ordering this discovery, the Court is not going to engage in any trimming of the requests in this instance.

The Court finds that the four *Intel* factors weigh against granting the discovery even if the for use requirement were met for the reasons set forth above.

### III.   CONCLUSION

The Court finds the for use requirement is not met and that the discretionary factors weigh against ordering the discovery requested pursuant to § 1782. Accordingly, the Court **RECOMMENDS** the Motion to Quash be **GRANTED**.

**IT IS HEREBY ORDERED** that any written objections to this Report and Recommendation must be filed with the Court and served on all parties no later than **January 3, 2023**. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that a reply to the objections shall be filed with the Court and served on all parties no later than **January 17, 2022**. The parties are advised that the failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998).

### IV.   Joint Motion to Defer Briefing on Petitioners' Amended Subpoenas

The parties' November 2, 2022 Joint Motion (ECF 22) to Defer Briefing on Petitioners' Amended Subpoenas adding additional documents and depositions topics is

1 **GRANTED** with Petitioners' requests to serve amended subpoenas deferred without

2 prejudice until this Court issues a final decision on the TuSimple Motion.

3       **IT IS SO ORDERED.**

4 Dated:  December 14, 2022

5

6              Hon. Bernard G. Skomal
             United States Magistrate Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3:22-mc-0112-BGS